IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DEBRA S. CAMPBELL, ) | |
| ) | |
|     Plaintiff ) | |
| ) | |
| v. ) | Case No. 3:05-cv-00151-DGW |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
|     Defendant. ) | |

**ORDER**

This matter is before the Court on the Petition for Review of the Commissioner's Decision Denying Benefits (entitled "Plaintiff's Brief") filed by the Plaintiff, Debra S. Campbell, on October 6, 2005 (Doc. 14). For the reasons set forth below, the final decision of the Commissioner of Social Security denying benefits is **AFFIRMED** and the matter is **DISMISSED WITH PREJUDICE**.

### BACKGROUND

Plaintiff, Debra S. Campbell, applied for Disability Insurance Benefits and Supplemental Security Income on March 27, 2003, initially alleging an onset of disability date of January 1, 2002 (Tr. 49-51), which was later amended to February 1, 2003 (Tr. 219). Plaintiff's claim was first denied on June 5, 2003 (Tr. 182-185), and upon reconsideration on August 7, 2003. The Plaintiff requested a hearing before an Administrative Law Judge (ALJ), which was held on June 23, 2004. (Tr. 193-220.) Following the hearing, ALJ Marsha R. Stroup issued an unfavorable opinion on October 4, 2004. (Tr. 13-20.) Plaintiff requested Appeals Council review of the decision. The Appeals Council denied review on January 6, 2005 (Tr. 5-7), which constituted the final review of the agency.

In January 1991, plaintiff visited the emergency room complaining of abdominal pain (Tr. 146). Technicians took x-rays of plaintiff's lumbar spine, which gave the impression of mild scoliosis and degenerative spondylosis with a narrowing of the L4-L5 disc space (Tr. 145). These x-rays also showed low gallbladder ejection fraction, while an ultrasound showed slight reflux with no evidence of ulcer (Tr. 145). Later, in August 2000, an x-ray showed osteoarthritis of the acromial clavicular joint in plaintiff's right shoulder (Tr. 144).

In the fall of 2002, John Lantz, M.D., performed cataract surgeries on both of plaintiff's eyes (Tr. 115, 119). Both surgeries were successful (Tr. 119). Following surgery in November 2002, plaintiff did not report any complaints and Dr. Lantz noted that she was "doing well" (Tr. 122).

In January 2003, plaintiff's primary treating physician, Charles Hendrix, M.D., performed a routine examination of plaintiff and noted nothing significant in his report (Tr. 139, 143). Dr. Hendrix next saw plaintiff in March 2003, at which time plaintiff complained of tremors, back and shoulder pain, and nausea (Tr. 141). Based on this examination, Dr. Hendrix completed an Arthritic Report Form to the state agency in April 2003 (Tr. 128-9). Dr. Hendrix diagnosed plaintiff with morbid obesity, first degree tremors, neuropathy, diabetes, and intractable back and leg pain (Tr. 128-9). Dr. Hendrix found plaintiff weighed 272.5 pounds at a height of 5'1" (Tr. 128). Plaintiff also complained of severe pain in the back, hips, knees, ankles, and feet, and of tenderness in the lumbar area (Tr. 128). Hendrix also noted plaintiff was significantly limited in bilateral grasping, and turning and twisting objects holding utensils, combing hair, turning the pages of a newspaper, and turning a door knob (Tr. 128). Further, plaintiff had significant limitations in using her hands for fine manipulation and with buttoning, zipping, and picking up a coin (Tr. 128). Dr. Hendrix suggested that plaintiff's use of a "walker

or cane [would] probably [be] helpful" (Tr. 129), although he did not evaluate her for the use of an assistive device (Tr. 129). Dr. Hendrix reported that plaintiff could not lift or carry ten pounds (Tr. 129). Dr. Hendrix did not indicate having performed any imaging or strength tests, or that he had prescribed surgery or other treatment (Tr. 129).

In May 2003, Raymond Leung, M.D., performed a consultative evaluation of plaintiff (Tr. 130-135). Dr. Leung reported that plaintiff complained of osteoarthritis in her shoulders and back, and of gout in her feet and toes (Tr. 130). Plaintiff told Dr. Leung that she managed her gout with medication, although it flared up once or twice a month (Tr. 130). Plaintiff reported taking acetaminophen for her pain (Tr. 130). According to Dr. Leung's report, plaintiff complained of tremors in her hands, but was not treating these tremors with medication (Tr. 130). While plaintiff told Dr. Leung that she occasionally had difficulty with bending and squatting, she was capable of standing without difficulty and could lift up to 25 pounds (Tr. 130). Additionally, plaintiff told Dr. Leung she could walk 1½ blocks and that she did not use an ambulatory aid (Tr. 130). Plaintiff did report difficulty with grip strength, but she reported being able to button, zip, and dress herself without difficulty (Tr. 130). Dr. Leung also found plaintiff weighed 287 pounds at 5'2" tall (Tr. 131). Her blood pressure was 158/90 (Tr. 131). Plaintiff had good vision, with visual acuities of 20/20 and 20/30 of her left and right eyes respectively while wearing glasses (Tr. 131). Dr. Leung performed a musculoskeletal evaluation on plaintiff, revealing a full range of motion throughout (Tr. 134-5). Dr. Leung found that Plaintiff had some minimal fine tremors in her left hand only, but noted that her fine finger movements were intact (Tr. 132). Dr. Leung further rated plaintiff's bilateral grip strength as a 4+ out of a possible 5 (Tr. 132). According to Dr. Leung's report, plaintiff's gait was significant for waddle and limp (Tr. 132), and plaintiff had difficulty heel walking (Tr. 132). However,

plaintiff exhibited no problems toe walking and could squat a quarter of the way down (Tr. 132). Dr. Leung reported that plaintiff could flex forward to 90 degrees with only mild lower back tenderness, but no paralumbar spasms (Tr. 132). The remainder of Dr. Leung's report was negative (Tr. 130-132).

In July 2003, plaintiff made a trip to the emergency room, complaining of back and leg pain (Tr. 155-6). The attendant physician, Lance D. Payton, M.D., found plaintiff had mild tenderness to palpitation of the bilateral joint area (Tr. 156). Dr. Payton reported plaintiff's straight leg raising was negative, and that plaintiff's gait and station appeared normal (Tr. 156). Dr. Payton examined plaintiff's extremities, finding no clubbing, cyanosis or edema (Tr. 156). Dr. Payton's assessment diagnosed plaintiff with back pain from muscle strain, as well as obesity with deconditioning (Tr. 156).

On March 23, 2003, plaintiff was admitted to the hospital after experiencing pain due to an infection in her lower abdominal wall (Tr. 158). Dr. Hendrix evaluated plaintiff, reporting that she had developed ulcerations over her lower abdominal panniculus due to obesity, leading to induration, inflammation, and pain in the fat fold of her abdominal wall (Tr. 158). Dr. Hendrix diagnosed plaintiff with panniculitis, nonhealing ulcerations of a lower abdominal panniculus (Tr. 158). Plaintiff was placed on antibiotics and discharged from the hospital the next day with a diagnosis of panniculitis, type II diabetes, obesity, hypertension, and hyperthyroidism (Tr. 158). The panniculitis symptoms seem to have ended by mid-April 2004 (Tr. 163).

Plaintiff testified at the hearing. She stated that she had began working at a health care center in July 2003, and was still working there as of the hearing in June 2004 (Tr. 198). At the health care center, plaintiff assisted in operations, including making beds for patients and

delivering refreshments such as water and ice cream (Tr. 198-9). On the job, plaintiff walked two-hour rounds, each with two fifteen minute breaks, and had one half-hour lunch break during the day (Tr. 200). Originally, plaintiff worked only three eight-hour days per week, but increased her work to four eight-hour days before the hearing to earn more money (Tr. 200). Plaintiff testified that she had taken the job to pay her bills (Tr. 199). She earned $6.50 per hour (Tr. 199). Despite her health problems, plaintiff took only five sick days in the year she worked at the health care center (Tr. 200). Further, over the year the plaintiff worked at the health care center, she lost over fifty pounds and greatly improved her stamina (Tr. 202). Plaintiff was only working four days a week, however, and testified that she did not think she could work five days a week at that job (Tr. 200).

When she wasn't working, plaintiff testified that she did her own housework, ran errands, and went to yard sales (Tr. 205-6). She testified that she drove, cooked, and shopped for herself (Tr. 206). With regards to her health, plaintiff testified that she had bouts of gout every few months from foods that she ate (Tr. 207). These bouts were painful and lasted three to four days, but did not prevent her from walking (Tr. 207). Additionally, plaintiff testified that she had occasionally severe pain in her hands, possibly from arthritis, that caused her to spill the water pitchers she used at work up to twice a week (Tr. 209-10). Plaintiff took Tylenol and ibuprofen to help control the pain (Tr. 210).

Vocational expert Lisa Courtney also testified at the hearing (Tr. 212). Courtney testified that plaintiff's previous work as a cook is generally performed as skilled medium work (Tr. 212), and that plaintiff's skills from her job as a cook were transferable to light, semi-skilled jobs such as grill and short-order cook (Tr. 214). In Courtney's opinion, plaintiff's current job at the health care center did not fit into any job listed in the Dictionary of Occupational Titles, but she

concluded from plaintiff's description that she was performing an unskilled, light job (Tr. 213). ALJ Stroup asked Courtney what type of work a hypothetical person with the plaintiff's age, education, and past work experience could perform, where such person was limited to light work, but could not climb and could only occasionally bend, crouch, or kneel (Tr. 214-5). The ALJ further stipulated that such person was limited to sitting a few minutes each hour (Tr. 217-8). Courtney concluded that such person could perform both light and sedentary jobs, including reception or information clerk, ticket taker, cashier, inspector, and assembler, and that these jobs existed in significant numbers (Tr. 215-7). Courtney noted, however, that such an individual could not work if her illness caused her to miss more than three days a month (Tr. 217). She also testified that if such person were further restricted to only occasional use of her hands or required an assistive device for support, the number of jobs would be greatly reduced (Tr. 218).

## DISCUSSION

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. 42 U.S.C. §405(g) ("[t]he findings of the Commissioner of Social Secuirty, as to any fact, if supported by substantial evidence, shall be conclusive ..."); Golembiewski v. Barnhart, 322 F.3d 912, 915 (7th Cir. 2005) (stating that "the reviewing court is not allowed to substitute its judgment for the ALJ's by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility") (quotation marks and citations omitted). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept to support such a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1972) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 101 (1938)). See also Sims v. Barnhart, 309 F.3d 424, 428 (7th Cir. 2002); Green v. Shalala, 51 F.3d 96, 101

(7th Cir. 1995).  An ALJ's decision must be affirmed if the findings are supported by substantial evidence and if there have been no errors of law.  Golembiewski, 322 F.3d at 915; Cannon v. Apfel, 213 F.3d 970, 974 (7th Cir. 2000).  However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues."  Lopez ex. rel. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003).

Supplemental insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act.  The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §423(d)(1)(A).  The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability.  20 C.F.R. §416.920.  The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity."  20 C.F.R. §416.920(c).  If he is, the claimant is not disabled and the evaluation process is over; if he is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments which "significantly limits ... physical or mental ability to do basic work activities."  20 C.F.R. §416.920(c).  Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations.  20 C.F.R. §401, pt. 404, subpt. P, app. 1.  If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling.  However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" (RFC) and the physical and mental demands of her past work.  If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled.  20

C.F.R. §416.920(e). However, if the claimant shows that her impairment is so severe that she is unable to engage is past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, if light of her age, education, job experience and functional capacity to work, is capable of performing other work and that such work exists in the national economy. 42 U.S.C. §423(d)(2); 20 C.F.R. §416.920(f).

Plaintiff first argues that ALJ Stroup's opinion erroneously failed to give controlling weight to the findings of the treating physician. Specifically, plaintiff notes Dr. Hendrix's letter dated April 21, 2003, in which Dr. Hendrix remarks that plaintiff "is not able to perform physical activities such as standing, lifting, and walking" and concludes that he "did not feel that [plaintiff] is capable of working at the present time" (Tr. 139). Plaintiff observes that the ALJ found this opinion "not credible" and placed "no weight on his assessment" (Tr. 17). Plaintiff argues that Dr. Hendrix had no reason to falsify his records or opinion, that he clearly noted what tests he performed (and did not perform), and that his opinion is consistent with his clinical observations. As such, plaintiff asserts that the ALJ should have given Dr. Hendrix's opinion controlling weight.

This Court finds the ALJ's assessment of Dr. Hendrix's opinion is proper and well-supported. An ALJ must give a treating physician's statements on the nature and severity of a plaintiff's impairments controlling weight only when such statements are well-supported by medically acceptable clinical and laboratory diagnostic techniques, and are not inconsistent with other substantial evidence in the record. 20 C.F.R. §404.1527(d)(2). An ALJ may, however, "discount a treating physician's medical opinion if it is inconsistent with the opinion of a consulting physician, or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability." Skarbek

8

v. Barnhart, 390 F.3d 500, 503 (7th Cir. 2004) (internal citations omitted). Generally, reviewing courts give great deference to an ALJ's credibility determinations, Collins v. Barnhart, 114 Fed. Appx. 229, 233 (7th Cir. 2004), and "give the [ALJ's decision] a commonsensical reading rather than nitpicking it," Shramek v. Apfel, 226 F.3d at 811 (internal citations omitted).

      Here the ALJ properly discounted Dr. Hendrix's opinions under this standard, as she clearly articulated that Dr. Hendrix's opinions were inconsistent with consulting physicians' findings and with plaintiff's testimony regarding her abilities. Regarding Dr. Hendrix's assertion in his April 2003 letter that plaintiff could not stand, lift, or walk, the ALJ explained that she discredited this assessment as "contradict[ing] the claimant's statements to Dr. Leung that she could stand without problems, lift 25 pounds and walk without an assistive device" (Tr. 17). The ALJ also noted that she found Dr. Hendrix's March 2004 Physician Questionnaire not entirely credible (Tr. 17). In that report, Dr. Hendrix asserted that plaintiff could stand for less than two hours at a time, would have to lie down or recline during the work day, and could not maintain consistent attendance (Tr. 157). In contrast, plaintiff testified at the hearing that her regular work routine included more than two hours of walking between breaks (Tr. 200), and that she had missed only five days in a year of work (Tr. 201). Further, as noted by the ALJ, both Dr. Leung's and the State Agency consultants' reports contradict the plaintiff's limitations as described by Dr. Hendrix (Tr. 17). Having noted these discrepancies, the ALJ properly articulated her reasoning for not giving Dr. Hendrix's opinion controlling weight.

      In addition to the reasons expressed in her decision, the ALJ might also have reasonably discredited Dr. Hendrix's reports as being internally inconsistent or inconsistent with other objective medical evidence. See Skarbek, 390 F.3d at 503 ("[a]n ALJ may discount a treating physician's medical opinion ... when the treating physician's opinion is internally inconsistent");

9

see also Dixon v. Massanari, 270 F.3d 1171, 1177-8 (7th Cir. 2001) (affirming an ALJ's decision to reject a treating physician's opinion where it was inconsistent with other medical evidence). The record indicates that several of Dr. Hendrix's statements regarding the plaintiff's functional limitations were contradictory. In a report dated April 18, 2003, Dr. Hendrix reported that the plaintiff had trouble using her fingers and arms, could not lift ten pounds, and "probably" needed an ambulatory aid (Tr. 128-9). Dr. Hendrix wrote a letter on April 21, 2003, in which he remarked that plaintiff could not "perform physical activities such as standing, lifting, [or] walking" (Tr. 139). However, in a later evaluation dated March 17, 2004, he concluded that plaintiff could lift up to a maximum of 20 pounds, lift and carry 10 pounds frequently, and stand or walk between two and six hours during a work day (Tr. 157). In addition to these internal contradictions, Hendrix's conclusions are inconsistent with Dr. Leung's findings that plaintiff has an unlimited range of motion, nearly full grip strength (4+/5), and no loss of fine finger movements (Tr. 130-133). Either type of inconsistency could have reasonably justified the ALJ's decision to discredit Dr. Hendrix's findings.

Further, the ALJ might have reasonably concluded from the record that Dr. Hendrix's findings were not well-supported by medically acceptable techniques and were thus not entitled to controlling weight. See 20 C.F.R. §404.1527(d)(2). For a medical opinion to be well-supported, it must reference supporting clinical findings and provide a meaningful explanation for the opinion, not just Plaintiff's objective statements. See Butera v. Apfel, 173 F.3d 1049, 1057 (7th Cir. 1999) (holding treating physician's opinion not entitled to significant weight where a physician "did not obtain evidence beyond ... [patient's] subjective complaints"). Dr. Hendrix indicated that his findings were "primarily historical," and based on only a "limited examination" (Tr. 139, 150). Further, Dr. Hendrix admits that his opinions were not based on

specific clinical tests, noting that the plaintiff "has not been able to undergo testing due to the lack of health insurance" (Tr. 139). Therefore, the ALJ could have reasonably concluded that Dr. Hendrix's reports, based largely on plaintiff's subjective complaints rather than clinical findings, were not entitled to controlling weight.

Plaintiff also argues that the ALJ's decision does not contain an assessment of all the evidence in the record. Notably, plaintiff suggests the ALJ's decision does not assess plaintiff's credibility regarding her subjective complaints, including the breaks she took during the workday, the use she made of a cart for support, the pain she felt from arthritis, and the pain she experienced from her episodes of gout. This Court finds this argument factually and legally unsupported. Although an ALJ must "articulate, at some minimum level, her analysis of the evidence ... [s]he is not required to address every piece of evidence or testimony." Dixon, 270 F.3d at 1176. Instead, a ALJ must "build an accurate and logical bridge from the evidence to her conclusion." Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001). Although the ALJ does not discuss at length plaintiff's complaints that did not significantly bear on her functional limitations,[1] she provided more than the required "glimpse into the reasoning behind her decision to deny benefits." Id. at 889. Here, ALJ Stroup found that the plaintiff "[was] not totally credible" regarding her subjective limitations (Tr. 19), based on "the claimant's testimony

---

[1] The plaintiff's pain from gout is such a complaint. The plaintiff testified at the hearing that her gout only rarely bothered her, maybe three to four days a month, typically if she ate the wrong foods (Tr. 207). Plaintiff noted that, even during an episode, she managed the pain with non-prescription pain killers (Tr. 207). Plaintiff's assertion that she had missed only five total days of work over the past year further suggests the conclusion that a gout flare-up did not prevent her from working (See Tr. 201). Medical evidence from the record corroborates this conclusion: Dr. Hendrix never listed gout as one of plaintiff's limiting impairments, while both Dr. Leung and the state agency physicians noted considering this condition in their overall finding that plaintiff was not disabled (Tr. 108, 130).

concerning her activities, her report to Dr. Leung ... and the findings of the State Agency medical consultants" (Tr. 17).  In thus explaining her determination of plaintiff's credibility regarding her subjective complaints, the ALJ's decision satisfies this standard.

      Moreover, despite the plaintiff's argument, the ALJ does provide an assessment of the plaintiff's subjective complaints.  First, the ALJ highlights the plaintiff's need to take additional breaks throughout the day to rest (Tr. 17), finding that her pain "require[s] her to sit for a few minutes each hour" (Tr. 17).  The ALJ included this finding in the hypothetical she posed to the vocational expert, who testified that such a limitation would not impair plaintiff's ability to work (Tr. 218).  Similarly, the ALJ addressed plaintiff's allegations that she had difficulty with grip and that she needed her work cart for support.  Despite these limitations, the ALJ noted plaintiff was able to do her own housework, laundry, cooking, and grocery shopping (Tr. 17).  Plaintiff testified at hearing that she spent her days off of work running errands and going to yard sales (Tr. 208), both presumably without her work cart for support.  Most notably, the ALJ found both of these claims unsupported by objective medical evidence.  The ALJ observed that Dr. Hendrix did not test the plaintiff's grip strength or evaluate the plaintiff's need for an ambulatory device (Tr. 15).  The ALJ specified, however, that Dr. Leung did evaluate the plaintiff's grip strength, rating plaintiff bilaterally at 4+/5 (Tr. 15).  The ALJ further notes that the Plaintiff reported to Dr. Leung that she did not use an assistive ambulatory device (Tr. 15).  Overall, the ALJ's decision provides a reasoned credibility assessment of the plaintiff's subjective complaints, despite plaintiff's assertions to the contrary.

      Last, the plaintiff argues that the ALJ's decision was not supported by substantial evidence.  Specifically, the plaintiff asserts that the ALJ's finding, that plaintiff had the residual functional capacity for light work, cannot be supported by the record.  As defined by federal

regulations, light work involves "frequent lifting or carrying of objects weighing up to 10 pounds ... [and may] require[] a good deal of walking or standing." 20 C.F.R. §416.967. Light work requires standing or walking, off and on, for approximately 6 hours in an 8-hour workday. SSR 83-10. Plaintiff asserts that she is incapable of meeting these requirements, suggesting that her own testimony at the hearing and her treating physician's reports indicate difficulty with frequent lifting and walking. As discussed at length above, the ALJ provided a well-reasoned and well-supported analysis for her findings on both the plaintiff's credibility and the weight she gave Dr. Hendrix's reports (See Tr. 17). This Court holds that substantial evidence supports the ALJ's findings as to plaintiff's residual functional capacity.

## CONCLUSION

For the foregoing reasons, the final decision of the Commissioner of Social Security denying benefits is **AFFIRMED** and this matter is **DISMISSED WITH PREJUDICE**.

**DATED: August 10, 2006**

                                                    s/ *Donald G. Wilkerson*
                                                    **DONALD G. WILKERSON**
                                                    **United States Magistrate Judge**